Heather Daniel DAY and Marvin Lee Day, Appellants,

v.

Eddie DAY and Sherry Day, Appellees.

No. 96–SC–132–DG.

Supreme Court of Kentucky.

Jan. 30, 1997.

V. Katie Gilliam Scott, Scott, Goss & Goss, Harlan, for Appellants.

Karen Greene Blondell, Middlesboro, for Appellees.

GRAVES, Justice.

This case concerns the fulfillment of statutory prerequisites for the valid adoption of a child.

On May 26, 1990, the adopted child, PJLD, was born to unmarried teenage parents who were minors. Following the birth of the child, both parents resided for several months in the paternal grandparents' home. In September 1991, the biological mother moved out of state and left PJLD with the biological father who remained with his parents in their home.

In April 1992, the biological mother returned to Kentucky. She removed her child from the paternal grandparents' home and cared for the child for one to two weeks until she entered the hospital. During this time, mother and child resided with the mother's sister. When the mother was hospitalized, the child was returned to the biological father and the paternal grandparents' home. PJLD, the biological father, and the grandparents continued to reside as a family unit in one home.

On May 14, 1992, the paternal grandparents filed a petition for adoption in the Harlan Circuit Court. Both biological parents signed an answer, entry of appearance, waiver, and consent to adoption on the same date. All instruments were prepared by the same lawyer who presumably represented all parties. The initiation of these formal legal proceedings establishes a clearly defined point of time when the adoptive parents sought exclusive legal custody of PJLD and the termination of the parental rights of the biological parents. Prior to this time, any intentions to change the legal custody of PJLD were not clearly defined.

On August 3, 1992, the Harlan Circuit Court entered findings of fact, conclusions of law, and judgment granting the paternal grandparents the adoption of PJLD.

On September 14, 1992, the biological mother sought legal assistance to have the adoption set aside, and on January 5, 1993, both biological parents moved the trial court to set aside the adoption. In support of the motion, the biological parents filed affidavits alleging that the adoptive parents misrepresented the nature of the consent form that they had signed.

On May 19, 1993, the biological parents filed a CR 60.02 motion to set aside the adoption. They specifically alleged that the petition for adoption was deficient because the residency requirements of KRS 199.470(3) had not been satisfied. Civil Rule 60.02 reads as follows:

On motion a court may, upon such terms as are just, relieve a party or his legal

representative from its final judgment, order, or proceeding upon the following grounds: ... (e) the judgment is void....

Under this rule, the biological parents could obtain relief by proving that the judgment was void. However, the trial court initially denied the biological parents' CR 60.02 motion, concluding that there was substantial compliance with the law by the adoptive parents.

The biological parents then moved the trial court to make additional findings of fact concerning whether the child had lived with the adoptive parents for 90 days prior to the filing of their petition for adoption as required by KRS 199.470(3) and to amend its judgment. Upon review and reconsideration of the CR 60.02 motion, the trial court found that the child had not resided with the adoptive parents continuously for the statutory period and concluded that it lacked jurisdiction over the subject matter.

In concluding that the 90–day requirement had not been met, the trial court made the following finding:

> The Court finds that even though the biological mother's testimony is somewhat conflicting on this issue, it is clarified and admitted by the adoptive paternal grandmother, that the child failed to reside in their home under her and the adoptive paternal grandfather's exclusive control for the ninety (90) day period immediately preceding the filing of the Petition for adoption on May 15, 1992.

In making additional findings of fact, the trial court found PJLD had not lived with his paternal grandparents for the requisite time preceding the filing of the May 1992 petition for adoption. More particularly, the trial court found PJLD had resided with his biological mother for one to two weeks in April of 1992. The trial court set aside the adoption and dismissed the proceeding with prejudice on February 3, 1994. The adoptive parents appealed.

On the 27th day of October 1995, the Court of Appeals reversed the circuit court judgment as clearly erroneous.

 Since adoption is a statutory right which severs forever the parental relationship, Kentucky courts have required strict compliance with the procedures provided in order to protect the rights of the natural parents. In *Higgason v. Henry*, Ky., 313 S.W.2d 275 (1958), an adoption was invalidated because the consent of the natural parent was not notarized. A prerequisite to filing a petition for adoption is fulfilling the residency requirements of KRS 199.470. *Wright v. Howard*, Ky.App., 711 S.W.2d 492 (1986), held that adoption only exists as a right bestowed by statute and, furthermore, that there must be strict compliance with the adoption statutes. The law of adoption is in derogation of the common law. Nothing can be assumed, presumed, or inferred and what is not found in the statute is a matter for the legislature to supply and not the courts. *Coonradt v. Sailors*, 186 Tenn. 294, 209 S.W.2d 859 (1948).

In 1995, when the Court of Appeals rendered its decision, KRS 199.470(3) provided in pertinent part:

> ... the petition shall not be filed until the child has resided continuously in the home of the petitioner for at least ninety (90) days immediately prior to the filing of the adoption petition.

When the adoption petition was filed in 1992, KRS 199.470(3) provided:

> ... no petition for the adoption of a child under the age of sixteen (16) shall be filed until after the child has lived continuously in the home of the petitioner for at least three (3) months immediately prior to the filing of the petition....

 Both versions of the statute (KRS 199.470(3)) clearly require that the child reside with the petitioner continuously for at least ninety (90) days immediately prior to the filing of the adoption petition. This mandate is a prerequisite to the trial court's exercise of jurisdiction to hear the petition for adoption. If the requirement is not satisfied, the trial court does not have the authority to hear the matter and any order conferred would be void. *Cf. Cabinet for Human Resources v. McKeehan*, Ky.App., 672 S.W.2d 934 (1984); *Cf. also Board of Adjustments v. Flood*, Ky., 581 S.W.2d 1 (1978). Furthermore, it is well established that parties may not by agreement, appearance, estoppel or otherwise confer subject matter

jurisdiction upon the court. *Rodney v. Adams*, Ky., 268 S.W.2d 940, 942 (1954). *See also Cann v. Howard*, Ky.App., 850 S.W.2d 57 (1993).

In reversing the trial court, the Court of Appeals cited *Walden v. Johnson*, Ky., 417 S.W.2d 220 (1967). *Walden* is readily distinguishable on the facts. *Walden* is a habeas corpus case arising after Kentucky relatives attempted to retain a child in Kentucky following a funeral despite his Indiana domicile and an Indiana guardian named in his late father's will.

Here, the trial judge was presented with substantial evidence to support his finding that PJLD had not resided with the adoptive parents for the statutory required time prior to the filing of the petition. The trial court as a finder of fact was in the best position to determine what was true and what was not true. As a matter of law, the trial court's finding was not clearly erroneous.

We hereby reverse the decision of the Court of Appeals and reinstate the judgment of the trial court which held the adoption to be void for lack of jurisdiction. If a petition is not filed in compliance with KRS 199.470(3), it follows that the petition must be dismissed. If so, KRS 199.550(1) mandates that the child "shall be returned" to the custody of the individual having custody at the time the petition was filed; otherwise, KRS 199.550(2) mandates that custody shall be determined by the juvenile court.

■ At the time the petition was filed, the child's father, Appellant Marvin Lee Day, was his legal custodian pursuant to an order of the juvenile session of the Harlan District Court. *Compare Hill v. Poole*, Ky., 493 S.W.2d 482 (1973), where there was no court order of custody. Although the trial court's order in this case vacated the judgment of adoption and dismissed the petition, it did not order the child's immediate return to the legal custodian. Marvin Lee Day then obtained another custody order from the juvenile session of the Harlan District Court and filed a petition for a writ of habeas corpus to obtain physical custody. That writ was issued by the Harlan Circuit Court, but subsequently was stayed by the Court of Appeals pursuant to a CR 76.33 motion filed by Appellees. The Court of Appeals' decision to reverse the trial court and reinstate the adoption effectively vacated the writ. Since we now reinstate the trial court's decision to dismiss the petition for adoption, Marvin Lee Day is entitled to immediate physical custody of his child pursuant to KRS 199.550. Therefore, we remand this case to the Harlan Circuit Court with directions to order the immediate return of the child to the legal custodian, Marvin Lee Day.

We are not unmindful that this result may cause some emotional trauma to the Appellees and to the child. However, Marvin Lee Day employed appropriate legal means to obtain custody following the trial court's decision. If he had succeeded, custody of the child would have been transferred long ago. The fact that his efforts were frustrated by prolonged judicial proceedings affords no justification for additional delay.

We urge that this matter be expedited by the trial court because four years of acrimonious intrafamilial litigation adversely affects the emotional and psychological development of the six year old PJLD.

> Furthermore, sudden separation of a young child from his or her parents may cause severe and perhaps even permanent psychological harm known as "anaclitic depression." Symptoms of this depression "include social retardation, avoidance of strangers, depressive withdrawal, language regression, impairment of normal intellectual development and pre-direction to self-injury." As a result, the child may have substantial difficulty forming strong, meaningful bonds throughout life.

Susan Yates Ely, Note, *Natural Parent's Right To Withdraw Consent To Adoption: How Far Should The Right Extend?*, 31 U.Louisville J.Fam.L. 685, 693 (1992) (Quoting Marshall Zolla and Laurence Strick, *When Parents Change Their Minds*, 5 Cal. Law 18, 19 (1985)).

STEPHENS, C.J., and COOPER, GRAVES, JOHNSTONE and STUMBO, JJ., concur.

LAMBERT, and WINTERSHEIMER, JJ., concur in result only.