RENDERED: JULY 8, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0426-MR

ALAN MCDANIEL                                                        APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE DEANA D. MCDONALD, JUDGE
ACTION NO. 15-CI-502807

MARY DOLLERIS                                                        APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: JONES, MAZE, AND TAYLOR, JUDGES.

JONES, JUDGE: The Appellant, Alan McDaniel, appeals from an order of the

Jefferson Family Court which awarded the Appellee, Mary Dolleris, equal

parenting time with the parties' minor children. Alan argues that the family court

applied the wrong statute thereby improperly shifting the burden on him to show

that equal parenting time was not in the children's best interests. After careful

review, we agree that the family court applied KRS[1] 403.270's presumption of equal parenting time in error where Mary was seeking to modify a prior timesharing order. Accordingly, we vacate and remand for additional proceedings.

## I. BACKGROUND

Alan and Mary were never married but share twins born in 2009. In November of that same year, Mary filed paternity suits against Alan in Jefferson Family Court (Case Numbers 09-J-505290 and 09-J-505291).[2] On or about December 18, 2012, agreed orders were entered in both actions for the parties to share joint legal custody of the twins, for equal timesharing with the parties alternating weeks with the twins, and for child support.

In 2015, Alan initiated the family court action giving rise to this appeal in Jefferson Family Court (Case Number 15-CI-502807) by filing a petition seeking sole legal custody of the twins and designation as the primary residential parent. This new case was assigned to the same family court division as the prior paternity actions. The family court conducted a hearing on February 26, 2016. Following the hearing, the family court entered an order designating Alan as the

---

[1] Kentucky Revised Statutes.

[2] While the record in this appeal mentions the prior paternity actions, the records from those actions were not certified as part of this appeal. However, this does not preclude our consideration of the parties' prior litigation involving these children. We are permitted to take judicial notice of the orders entered as part of the juvenile actions. *Collins v. Combs*, 320 S.W.3d 669, 678 (Ky. 2010).

primary residential parent with Mary to have timesharing/visitation with the twins every other weekend; the order did not grant Alan's request for sole legal custody of the twins meaning the parties continued to share joint custody under the prior juvenile paternity case orders.

Approximately one month later, the parties entered into an agreed order that provided Mary would continue to have visitation every other weekend, but then switching Mary's weekends. Just above her signature line on the order appears a handwritten statement from Mary that, "I am not in any way in agreement to only having visitation with my children every other weekend, however, that being the circumstances at this time, I am in agreement to switching the weekends in place currently." The agreed order did not address legal custody of the twins.

In December 2018, Mary filed a motion in the family court seeking to "change custody, set a holiday schedule and to expand parenting time." An affidavit from Mary attached to the motion stated, in relevant part, that the parties share joint custody of the children. The parties attended mediation, which was unsuccessful, and the motion was re-noticed several times. The family court ultimately conducted a hearing on Mary's motion on March 10, 2021.

At the hearing, Mary testified on her own behalf and also called Alan's parents to testify that they supported her having more time with the twins.

Mary also presented evidence that while in Alan's care the twins were tardy numerous times during the non-traditional instruction ("NTI") days Jefferson County Public Schools ("JCPS") used as a replacement for regular in-person school while in the midst of the COVID-19 pandemic. Alan also testified at the hearing. For his part, Alan stated that he had no problem continuing to share joint custody of the twins with Mary, but he believed it was not in the twins' best interests to split their week between two households when they were thriving under the parties' current schedule. Alan and his attorney also noted that they had only been supplied the JCPS attendance records by Mary about an hour before the hearing and had not had an opportunity to investigate their accuracy; however, during his testimony, Alan maintained that the twins had a much better attendance than the documents introduced by Mary reflected.

After the hearing, but before an order was entered, Mary filed a notice with the family court which indicated the JCPS attendance information she obtained and presented at the hearing was inaccurate and that the twins, in fact, had maintained a very high attendance rate during NTI. The notice was accompanied by additional documentation from JCPS.

Despite Mary having filed a notice of correction, the family court's order made findings based, in part, on the inaccurate JCPS records submitted during the hearing.[3] Specifically, the family court found that Mary:

> provided testimony and documentary evidence that the children have been consistently late for school during this school year that has been solely in the NTI format. She expressed that this is one major concern underlying her motion to modify the parenting schedule. She testified that she wants to be able to ensure that the children are able to get up and participate in school as well as help them with homework, etc.

Then, citing KRS 403.270, the family court concluded that Alan had failed to rebut the statutory presumption in favor of joint custody and equal parenting time. Specifically, the family court pointed out that Alan had not presented any "testimony or evidence that expanded patenting time for [Mary] would be harmful, in any way, to the children." In contrast, the family court noted that even though Mary testified that she would have to rely on grandparents or other family members to care for the twins during the week due to her work schedule, this fact alone was not sufficient to rebut the presumption that equal parenting time was in the twins' best interests.

---

[3] The family court likely inadvertently overlooked Mary's notice since it was filed after the hearing as its order makes no mention of Mary having corrected the record.

Based on its findings and conclusions, the family court ordered the parties to share parenting time according to a "2-2-3 schedule" with Mary having the twins on Mondays and Tuesdays and Alan having them on Wednesdays and Thursdays with the parties to alternate weekends. Given the more equal division of parenting time, the family court ordered that Mary's child support obligation was to cease with neither party being ordered to pay child support to the other. The family court's order referenced only a modification of timesharing and child support. It did not address legal custody.

This appeal by Alan followed.

## II. STANDARD OF REVIEW

Generally, in family court matters our review is governed by the clearly erroneous standard. CR[4] 52.01. Under this standard, the family court's findings will not be disturbed unless there exists no substantial evidence in the record to support them. *See M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114, 116 (Ky. App. 1998) (citing *V.S. v. Commonwealth, Cabinet for Human Resources*, 706 S.W.2d 420, 424 (Ky. App. 1986)). Clear and convincing proof does not necessarily mean uncontradicted proof, but rather requires proof of a probative and substantial nature that is sufficient to convince ordinarily prudent minded people. *Id.* at 117. However, whether the family court correctly applied

---

[4] Kentucky Rules of Civil Procedure.

the law to the facts is a question of law that we review *de novo*. *E.K. v. T.A.*, 572 S.W.3d 80, 82 (Ky. App. 2019) (citation omitted).

### III. ANALYSIS

Before examining Alan's assignments of error, we must address an important preliminary issue. As commonly occurs in family court cases, the parties have been using the terms custody, timesharing, and visitation interchangeably throughout these proceedings. This has created some confusion in the record.

Custody and timesharing are distinct matters. *Pennington v. Marcum*, 266 S.W.3d 759 (Ky. 2008), is particularly instructive in distinguishing these two concepts. In *Pennington*, the Kentucky Supreme Court explained that the distinguishing feature of custody is not the amount of time spent with each parent, but whether decision-making is vested in either one parent or both. *Id.* at 764. However, "[t]o most people, having custody means having possession of the child." *Id.* at 767. This confusion has led parents to often request a modification of custody or timesharing when they are actually seeking a modification of the other. *Id.* *Pennington* makes clear that, regardless of the terminology used to describe a timesharing arrangement, custody concerns only who has the authority to make decisions regarding the child, not the amount of time the child spends with each parent. *Id.*

-7-

Although Mary's motion used the term custody, based on the testimony and argument presented at the hearing before the family court, it is clear to us that in substance Mary was seeking a modification of timesharing to give her more time with the twins.[5] Modification of timesharing is determined pursuant to KRS 403.320(3). *Pennington*, 266 S.W.3d at 765. That statute provides: "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child; but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health." KRS 403.320(3).

Here, instead of applying the best interest standard of KRS 403.320, the family court applied the rebuttable presumption standard for initial custody and timesharing determinations under KRS 403.270. This is in contravention of the Kentucky Supreme Court's recent holding in *Layman v. Bohanon*, 599 S.W.3d 423 (Ky. 2020). Therein, the Court held that while the presumption applies in initial custody/timesharing decisions, it does not apply when only modification of timesharing is sought. *Id.* at 431.

---

[5] At the beginning of the hearing, Mary's attorney informed the family court that she was there to set aside Alan's designation as primary residential parent, to expand her parenting time, and for a modification of child support. No mention was made of a change in custody, despite the language contained in Mary's motion. Further, Alan testified that he did not have a problem continuing to share joint custody with Mary.

[W]e hold that a modification of visitation or timesharing is governed by KRS 403.320, rather than the standard for an initial custody determination as set forth in KRS 403.270. Accordingly, the recently added presumption of joint custody and equal parenting time in KRS 403.270 applies to custody determinations, but it does not apply to modifications of visitation or timesharing.

In the present case, the parties sought and the family court ordered a modification of timesharing. As a result, KRS 403.320(3) should have applied. Under that statute, the family court could modify the timesharing arrangement if it first found that the modification was in the best interests of the children, or it could restrict timesharing (i.e., order a "less than reasonable" timesharing) if it first found that the children's physical, mental, moral or emotional health was seriously endangered. Thus, the Court of Appeals should have considered whether the modified timesharing arrangement was "less than reasonable." Under our case law, less than reasonable does not necessarily mean less than fifty percent parenting time. *See, e.g.*, [*French v. French*, 581 S.W.3d 45, 50 (Ky. App. 2019)]. Nevertheless, the Court of Appeals referred to the standard for custody determinations in KRS 403.270 and concluded that any reduction in a fifty-fifty timesharing arrangement was less than reasonable or, in other words, a restriction. Stated another way, the Court of Appeals concluded that any change in the parties' equal timesharing arrangement required a finding that visitation would seriously endanger the children's physical, mental, moral, or emotional health. We believe that this was an improper conflation of the standards for custody determination under KRS 403.270 and timesharing modification under KRS 403.320. As noted above, these statutes set forth separate standards for distinct stages of a custody proceeding.

*Id*. (emphasis omitted).

The family court's order plainly indicates that it understood that it was being asked to modify timesharing not to make an initial custody determination. To this end, it stated that Mary "has moved the Court to modify the current parenting schedule [which had been in place for several years] and allow her more time with the children." Since Mary was seeking a modification of the timesharing ordered in 2016, the family court erred when it shifted the burden to Alan and applied KRS 403.270's rebuttal presumption.

Additionally, we find Mary's argument categorizing the family court's 2021 order as an initial custody decision unavailing. While no prior order referring to custody appears in the 2015 action, the parties were awarded joint custody of the twins in 2012 as part of the juvenile paternity actions. *See* KRS 406.051(2) ("The District Court may exercise jurisdiction, concurrent with that of the Circuit Court, to determine matters of child custody and visitation in cases where paternity is established as set forth in this chapter. The District Court, in making these determinations, shall utilize the provisions of KRS Chapter 403 relating to child custody and visitation.").

On remand, the family court should apply KRS 403.320 to decide Mary's request for modification of the prior order on timesharing. Since Mary is the movant, she bears the burden of proof, not Alan. Additionally, on remand the family court should take notice of Mary's correction regarding the twins'

attendance records and her concession that the twins maintained a satisfactory attendance record while in Alan's care.  We make no conclusions about whether the evidence (without reliance on the inaccurate attendance records) supported or will support a modification in timesharing under the standards of KRS 403.320.

## IV. CONCLUSION

For the foregoing reasons, the order of the Jefferson Family Court is vacated and remanded for proceedings not inconsistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Justin R. Key
Jeffersonville, Indiana

BRIEF FOR APPELLEE:

Erin S. Kennedy Startzman
Louisville, Kentucky